————o————

61  133
42a  421

JOHN W. BURRESS, Respondent, *vs.* E. R. BLAIR, Appellant.

1. *Contracts—Construction of—Words, in what sense to be understood.*—Words are to be construed according to their strict and primary acceptation, unless from the context of the instrument and the intent of the parties to be collected from it, they appear to be used in a different sense, or unless, in their strict sense, they are incapable of being carried into effect.

2. *Contract—Bank account, considered as "account due firm," when—Latent ambiguity—Construction of contract, when not for jury.*—By the terms of a contract dissolving a partnership between A. and B. in a certain store, the former sold the latter "all the right, title and interest of said A. in said store, with all the notes and accounts due, the latter assuming the payment of all debts and claims against the said firm." *Held,* that the contract raised the presumption that the parties intended a complete settlement of all the partnership affairs; that a balance standing to the credit of the firm in bank was embraced in the "accounts due the firm;" that there was no latent ambiguity in the contract, and that it was error to admit oral testimony to explain it, and leave its construction to the jury.

*Appeal from Pettis County Circuit Court.*

*Durham & Sangree, and Snoddy & Bridges,* for Appellant.

I. The moment the money was deposited in the bank, it was the property of the bank, who then became the debtor of

the firm to the amount so deposited, payable on demand, and the $1,614.26 was one of the accounts due the firm. (Chapman vs. White, 3 Seld., [6 N. Y.] 412; Maine Bk. vs. Fulton Bk., 2 Wall., 252; Cote vs. U. S. Bk., 3 Cr. C. Ct. R., 50, 95; Carroll vs. Cone, 40 Barb., 220; Marsh vs. Oneida Central Bk., 34 Barb., 298; Wetchum vs. Stevens, Duer, 463; affirmed, 79 N. Y., 499; Beckwith vs. Union Bk., 4 Sanf., 604; Comm. Bk. vs. Hughes, 17 Wend., 94; Dykers vs. Leather Manf'g Bk., 11 Paige, 612; *In re* Franklin Bk., 1 Paige, 294; Jermain vs. Denniston, 2 Seld., [6 N. Y.], 276; 17 Wend., 94, 101; 1 Met., [Mass.] 216; 1 Hump., [Ark.] 114; 3 Am. Law Reg., 319; 9 id., 191; 7 id., 183; 8 id., 754; 11 id., 171.)

II. The court erred in submitting to the jury the interpretation of the contract. Its construction and interpretation were plain and belonged exclusively to the court. (See Pars. Contr., vol. 2, [5th Ed.] 492; State to use vs. Le Faivre, 53 Mo., 470.)

*Phillips & Vest*, for Respondent.

I. There was no error in the Circuit Court permitting the case to be tried by a jury. This is an action for the recovery of money only, and it was therefore proper that it should be tried by a jury. (2 Wagn. Stat., ch. 110, art. 9, § 12; Bray vs. Thatcher, 28 Mo., 129; Conran vs. Sellew, 28 Mo., 320; Peyton vs. Rose, 41 Mo., 257.)

The question in this case was one of intent, and terms of the written agreement are doubtful; where such is the case, the court will refer the question to a jury. (See Greenl. Ev. §§ 277–278 and notes; Bunce vs. Beck, 43 Mo., 266.)

II. The meaning of the contract being doubtful, evidence was proper as to its subject matter, and the circumstances under which it was made. (Bunce vs. Beck, 43 Mo., 266; Schuetze vs. Bailey, 40 Mo., 69; Newark & Madison R. R. vs. Sandford, 8 Vroom; 1 Greenl. Ev., §§ 277, 286, 287, and notes; 2 Pars. Contr., pp. 11, 59, 76.)

III. Under the agreement of dissolution, defendant purchased only plaintiff's interest in the goods and business of

the store, and the notes and accounts due the firm for goods sold ; but the money in bank was not included. Whilst a bank account may be considered an account, yet in ordinary business, and as generally understood, money in bank on deposit is considered as so much cash on hand, and not as an account; it is an unliquidated and uncollected debt. (1 Bouv. Law Dict., pp. 33, 187.)

VORIES, Judge, delivered the opinion of the court.

The petition in this case, charged in substance that on the 16th day of August, 1872, plaintiff and defendant were partners in buying and selling ready-made clothing, &c., in the town of Sedalia, in Pettis county ; that by the terms of the partnership they were equal owners of all the assets and profits of said business; that on the said 16th day of August, 1872, by written agreement executed by the parties, said partnership was dissolved ; that for the consideration of twelve hundred dollars plaintiff sold and conveyed to defendant all of plaintiff's right, title and interest in the store occupied by said firm, with all notes and accounts due said firm; and it was further agreed that the defendant should pay all of the debts and claims against said firm ; that at the time of the dissolution of the partnership there was on deposit to the credit of said firm, in a banking house named, the sum of $1,614.26, it being a part of the assets of said firm ; that one-half of said sum belonged to the plaintiff; that upon the dissolution of said partnership as aforesaid, defendant wrongfully took possession of said sum and refuses to pay to plaintiff one-half thereof or any part thereof. Wherefore judgment is prayed, etc.

The defendant, in his answer, admits the partnership, its dissolution at the time named in the petition, and that there was due the firm, on account of money, deposited by said firm, from the bank named, the said sum of $1,614.26 ; but defendant denies that any part of said sum belonged to the plaintiff, or that he wrongfully withheld the same from plaintiff. The defendant then avers that said sum of $1,614.26 was deposited

in said banking institution at various times by said firm in the usual course of business for their own convenience, and that the same was placed in said bank as a general deposit, payable to them on demand, and that by the terms of said agreement of dissolution the right to demand and receive the said money, became vested in defendant, and that said banking house became the debtor of defendant, all of plaintiff's right to any part thereof having been transferred by said agreement of dissolution by plaintiff to defendant. A copy of the agreement was filed with the answer.

The plaintiff replied to this answer, denying that the plaintiff's right to a part of the fund in the bank was transferred to the defendant by the agreement of dissolution, or that said money, or the right to demand or receive the same, became vested in the defendant by said agreement, etc.

In January, 1874, the case came on for hearing.  The counsel on each side suggested that the only question to be tried was the construction of the contract of dissolution mentioned in the pleadings, as to whether the deposit account in bank mentioned in the pleadings passed to the defendant by the terms of said contract of dissolution—that it was a question for the court and not for a jury. The court ordered the pleadings to be read, so that it might determine whether evidence would be heard on the issues, and after hearing the pleadings the court announced that it was unable to determine from the contract itself what was the intention of the parties as to the disposition of said bank account; that evidence would be heard on the same, and that on this question the parties could have a jury, whereupon the plaintiff demanded a jury.  The defendant objected to calling a jury, on the ground that it would be submitting to a jury the construction of a written contract.  The court overruled the defendant's objection, and impaneled a jury.  The defendant excepted.

The plaintiff then read in evidence the contract of dissolution referred to by the parties, which is as follows:

"Know all men by these presents that the copartnership heretofore existing between E. R. Blair and J. W. Burress,

under the firm name of Blair & Burress, in the clothing business on South Main street, in the city of Sedalia, is this day dissolved by mutual consent of the said partners, on the following terms, to-wit: Said Blair, for and in consideration of the sum of $600 in hand paid to said Burress, and also for the further consideration of $600 to be by him paid in thirty days from this sale, has purchased all the right, title and interest of said Burress in the said store, with all notes and accounts due the said firm; and it is further agreed and understood by the said Blair that he will pay all the debts of the firm and settle up all claims against the same. In testimony whereof we, the parties, have hereto set our hands and seals this 16th day of August, A. D., 1872."

This contract was signed and sealed by the parties.

The defendant objected to the reading of the contract to the jury, on the ground that the contract should be construed by the court, and that there was no question of fact to submit to a jury in reference thereto. This objection was overruled, and the defendant excepted.

The plaintiff was then introduced as a witness, and was permitted to testify as to the value of goods on hand at the time of the dissolution; the amount of debts due to and from the firm; the amount for which the goods were insured. He also testified as to a transaction betwen him and defendant in reference to the assignment of policies of insurance on the goods of the firm; also as to certain agreements between the parties at the time of forming the partnership, in reference to checking out money deposited in bank, and generally as to their manner of doing business. This evidence was all objected to by the defendant as given, on the ground of its irrelevance and incompetence, and because it was calculated to mislead the jury, and was not competent to explain or vary the written contract. In fact, defendant objected to all oral evidence in the case, for the reasons above stated. All of his objections being overruled, he again excepted.

The defendant also introduced evidence which tended to contradict the evidence offered by the plaintiff.

The court at the close of the evidence, at the instance of the plaintiff, instructed the jury as follows:

1st. "The court instructs the jury that it stands admitted by the pleadings in the case that at the time of making the agreement of dissolution read in evidence, the plaintiff and defendant were partners and equal owners of all the assets and profits of their said business, each of said partners owning one-half of said assets and profits.

2d. "The jury are instructed that the question in this case is not what the parties may have secretly intended, but what meaning did they intend to convey by the words in the written agreement of dissolution, and to ascertain this meaning the jury may take into consideration all the facts and circumstances surrounding the parties at the time said written agreement was made.

3d. "If the jury believe from the evidence that the parties did not intend to include the sum of $1,614.26 in the Central Missouri Banking and Savings Association to the credit of Blair & Burress, in the sale of plaintiff's interest to defendant, then they must find for the plaintiff the sum of $807.13, with six per cent. interest from August the 16th, 1872, to this time."

These instructions were objected to by the defendant and exceptions saved.

The court, among other instructions asked for, refused the following:

"The court instructs the jury, on the part of the defendant, that by the express terms of the written contract of dissolution upon which this suit was instituted, the $1,614.26 remaining in the Central Bank passed to and became the property of the defendant, Blair."

The court then, on its own motion, instructed the jury that "although it is admitted by the pleadings that the plaintiff and defendant were equal partners in the assets and profits of their business, yet you are not to find your verdict upon any notions of your own based upon what you consider equitable and just between the parties under the evidence, but you are

to arrive at what was the intention of the parties touching the bank deposit at the time of their dissolution, regardless of any equitable adjustment of their partnership affairs, as the parties had the right to make their own terms of dissolution."

Exceptions were duly taken to the giving of this instruction by the court, and to the refusing of those asked by the defendant.

The jury returned a verdict in favor of the plaintiff, and after unsuccessful motions had been made for a new trial and in arrest of judgment, and final judgment was rendered, the defendant again excepted and appealed to this court.

Whether the Circuit Court might properly submit the case to a jury after the parties had submitted the construction of the contract to the consideration of the court, if it had really appeared that there were such latent ambiguities in the contract as to admit of parol evidence to make a proper construction and application of the terms of the contract, need not be considered in this case. The question upon which the decision of this case must turn is, whether the contract under consideration is capable of an intelligent construction, and its application to its subject matter is not left in doubt from its own language without any resort to extraneous evidence ? If it was, then its construction devolved on the court as a matter of law, and it was improper to shift the responsibility on a jury.

From the action of the court in impaneling a jury under the circumstances of this case, and in admitting parol evidence of all of the circumstances surrounding and connected with the business of the partners at the time of the contract of dissolution, as well as from the instructions given and refused by the court, it must have considered that the contract of dissolution presented such a case of latent ambiguity as to prevent a proper construction of its language by anything contained in the contract, and with this view evidence was admitted showing the value of the goods and other assets belonging to the firm and the habits of the parties in the conduct of their

business, in order to enable the jury to say what was intended to be comprehended in or by the words "notes and accounts" as said words are used in the contract. In this we think the court was wrong.

This is not the case of a contract in which the words used in the contract will apply equally to two different persons or things as the subject matter of the contract, leaving it doubtful which was intended; but the difficulty, if there is a difficulty, in construing the contract grows out of what is considered to be an uncertainty in the meaning intended by the parties to be given to the words "all notes and accounts due the said firm" as the same are used in the contract of dissolution. It is contended that the words "all notes and accounts," as used in the contract, cannot be construed to include the bank account in favor of the firm. It must be recollected that the meaning to be attached to words very frequently depends on the connection in which they are used. The word "store," which is used in this contract, if used in connection with a description or designation of buildings on a street, might, and frequently would, be construed to mean the house in which goods were kept for sale, or a house erected for that purpose; and if we should say that a partnership firm had sold to a third person all of their notes and accounts, without any qualifying words, said words would hardly be construed to include an account with a bank for money deposited, while if either of these words were used in other connections, they might properly admit of a very different construction.

The object to be attained in construing a contract is to get at the intention of the parties. To do this, it will not do in all cases to take one or two words and construe them according to their popular meaning, without any regard to the connection in which they stand. Words are to be construed according to their strict and primary acceptation, unless from the context of the instrument and the intent of the parties to be collected from it, they appear to be used in a different sense, or unless in their strict sense they are incapable of being carried into effect. (1 Chit. on Contracts, 11 Am. Ed., p. 113.)

In reference to the contract under consideration, we think when taken as a whole, that it presents no latent ambiguity in its construction, or in its application to the subject matter, which would justify the introduction of parol evidence. The contract in its main object is to dissolve and settle a partnership business which had previously been carried on between the parties. The defendant had purchased out the plaintiff's interest in the store, and the partnership was to be dissolved on the terms that the defendant was to pay plaintiff $600 at once, and the further sum of $600 in thirty days, in consideration for which he was to receive all of the right, title and interest of the defendant in the said store, with all notes and accounts due the said firm, and that the defendant further agreed to pay all of the debts and settle up all claims against the firm. It would be hard to resist the conclusion that the intention of the parties by this language, was to give the most extended meaning to the words " accounts of the firm," and thereby include the account of the firm with the bank. It seems to have contemplated an entire settlement of the partnership effects—the defendant paying the plaintiff $1,200 and assuming all the responsibilities of the firm, and taking all of its assets. It is not to be presumed that the parties intended to leave any part of their partnership business unsettled. There was no latent ambiguity in the contract to be explained by parol evidence, and the court improperly admitted the introduction of such evidence, and improperly submitted the construction of the contract to the jury. (Bunce, etc. vs. Beck, 43 Mo., 266, and cases there cited.)

The judgment will be reversed and the case remanded. The other judges concur.